[No. A130599. First Dist., Div. Five. Dec. 14, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT SAMUEL FRENCH, Defendant and Appellant.

### COUNSEL

Stephanie Clarke, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and David M. Baskind, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**SIMONS, J.**—A search warrant affidavit contains information from three informants, none of whom are reliable. Each informant states two named

individuals are selling drugs from a particular residence and drive a particular vehicle. The affiant officer corroborates those facts and determines that one of the alleged drug dealers has a history of narcotics offenses, but fails to include in the affidavit the dates and any details of those offenses. We conclude that the affidavit was insufficient to establish probable cause to issue the warrant, in part because the police corroboration of the informants' statements and the "interlocking" details of those statements related to "pedestrian" facts. However, we find the good faith exception to the exclusionary rule applicable and affirm.

## BACKGROUND

In March 2010, Eureka Police Officer Gary Cooper sought a warrant to search the persons of Robert Samuel French (defendant) and Maria Camacho, a house on Summer Street in Eureka where defendant and Camacho resided, and a black pickup truck owned by defendant.

Cooper's affidavit in support of the application for a search warrant stated in relevant part:

"In the latter part of 2009 I arrested a subject and took him to jail. While enroute [to] the jail I asked the subject who he knew that was dealing drugs in Eureka. The subject told me of a person named Robert who lived on the corner of Harris and Summer. I asked the subject how he knew Robert was selling drugs. The subject told me his wife bought her heroin from Robert. I was driving on Broadway going towards the jail. I drove up Harris Street and asked the subject to point the house out to me as we drove past. As we drove past the subject pointed to the residence on the south east corner of Harris and Summer Streets. The subject also said Robert drove the black colored truck that was parked in front of the residence on Summer Street.

"After dropping the subject off at the jail I drove back to the residence on the corner of Harris and Summer Street. The black truck was still parked in front of the residence on the [S]ummer street side. I ran a registration check on the vehicle. The return information from dispatch showed the vehicle was registered to Robert French with an address of 3105 Summer Street.

"On 02-10-10 Officer J. Braud and I were talking to a person who here in will be referred to as confidential reliable informant one. (CRI-1). I was talking to CRI-1 about people in Eureka who sold drugs, specifically heroin or meth. CRI-1 told us a woman named Maria and her boyfriend Robert who were selling heroin. I asked CRI-1 where Maria and Robert lived. CRI-1 said they lived on the corner of Harris and Summer Street. I asked CRI-1 if Robert or Maria drove any cars. CRI-1 said [he/she] only knew of a black

colored full size truck Robert drove. I asked CRI-1 if [he/she] knew the last names of Maria and Robert. CRI-1 said he/she knew Maria's last name was Camacho. [He/she] said he/she didn't know Robert's last name. I asked CRI-1 where Camacho keeps her drugs she sells. [He/she] said she keeps it in the front of her pants so if she gets stopped by a male police officer he won't search the front of her pants. CRI-1 said she also keeps it in a back pack she keeps with her.

"I asked CRI-1 if Robert was also selling. CRI-1 said Robert does sell meth and heroin, but not as much as Maria.

"On 02-24-10 I talked with a person who here in will be referred to as CRI-2. CRI-2 has given information to law enforcement in the past. The information was corroborated and criminal cases were made behind the information.

"I asked CRI-2 who [he/she] knew that was selling drugs. CRI-2 told me of a woman named Maria Camacho who lived on the corner of Harris and Summer Street. CRI-2 said Camacho deals heroin and meth out of her house with her boyfriend. I asked CRI-2 if [he/she] knew the name of Camacho's boyfriend and if he was selling meth and heroin also. CRI-2 said he/she only knew the boyfriend's first name as Ron and Ron was also selling meth and heroin out of the house.

"I asked CRI-2 if [he/she] knew of any vehicles Camacho and Ron might drive. CRI-2 said Ron drives a black truck and Camacho drives a big red sedan.

"I believe based on the previous information I have regarding Robert French that Ron is actually Robert. This is based on the registered owner information on the black truck and other people telling me there is a Robert living at the residence.

"I ran a criminal history check on Camacho through dispatch. The return information showed she has multiple arrests and convictions for possession of controlled substance for sale, and transportation of controlled substance.

"I have talked with CRI-2 on and off for the last two weeks, CRI-2 told me both Robert and Maria are still dealing out of their house on Harris and Summer Street. I asked CRI-2 how [he/she] knew this. He/she said [he/she] has been to their house recently and has seen people who came to the house. CRI-2 saw Robert and Maria take them in another room. The people left a short time later. CRI-2 believed the people who came to [the] house were buying drugs from Robert and Maria."

A magistrate signed the search warrant and the police served it on March 10, 2010. In the house the police discovered methamphetamine, marijuana, firearms, and paraphernalia associated with drug use and sales. The police detained defendant at a different location as he was getting into his vehicle, and discovered on his person and in a backpack methamphetamine, marijuana, psilocybin mushrooms, prescription pills, and two syringes.

In April 2010, the Humboldt County District Attorney filed an amended complaint charging defendant with various narcotics offenses. Defendant moved to suppress all the evidence seized pursuant to the search warrant. Following a joint preliminary hearing and suppression hearing, the motion to suppress was denied on the basis that there was probable cause for issuance of the warrant and, if not, the good faith exception applied. An information was filed charging defendant with possession of methamphetamine for sale (Health & Saf. Code, § 11378) (count 1); transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)) (count 2); transportation of psilocybin mushrooms (Health & Saf. Code, § 11379, subd. (a)) (count 3); and allowing a place to be used for preparing or storing methamphetamine (Health & Saf. Code, § 11366.5, subd. (a)) (count 4), with an enhancement for being armed with a firearm (Pen. Code, § 12022, subd. (a)(1)).

The trial court granted defendant's Penal Code section 995 motion to dismiss count 4. The court denied defendant's Penal Code section 1538.5, subdivision (i) renewed motion to suppress the evidence obtained pursuant to the search warrant, reasoning that "[e]ach informant, the untested first informant, and each confidential reliable informant (CRI) independently corroborate one another, establishing probable cause to search."

Defendant pleaded guilty to count 3 and the remaining counts were dismissed. Imposition of sentence was suspended, and defendant was placed on three years' probation with various conditions, including that he serve 120 days in jail. This appeal followed.

## DISCUSSION

### I. *Cooper's Affidavit Failed to Establish Probable Cause*

#### A. *The Legal Framework*

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or

things to be seized." The " 'physical entry of the home *is the chief evil against which the wording of the Fourth Amendment is directed.'* [Citation.]" (*Payton v. New York* (1980) 445 U.S. 573, 585–586 [63 L.Ed.2d 639, 100 S.Ct. 1371]; see also *People v. Campa* (1984) 36 Cal.3d 870, 878–879 [206 Cal.Rptr. 114, 686 P.2d 634] (*Campa*).)

█ "The question facing a reviewing court asked to determine whether probable cause supported the issuance of the warrant is whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing. [Citations.] 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1040–1041 [99 Cal.Rptr.2d 1, 5 P.3d 68], quoting *Illinois v. Gates* (1983) 462 U.S. 213, 238–239 [76 L.Ed.2d 527, 103 S.Ct. 2317] (*Gates*); accord, *People v. Scott* (2011) 52 Cal.4th 452, 483 [129 Cal.Rptr.3d 91, 257 P.3d 703].) Whether an affidavit provided the magistrate " 'substantial basis' " for concluding there was probable cause is an issue of law "subject to our independent review." (*People v. Camarella* (1991) 54 Cal.3d 592, 601 [286 Cal.Rptr. 780, 818 P.2d 63] (*Camarella*).) But, because "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," we accord deference to the magistrate's determination and " 'doubtful or marginal' " cases are to be resolved with a preference for upholding a search under a warrant. (*United States v. Leon* (1984) 468 U.S. 897, 914 [82 L.Ed.2d 677, 104 S.Ct. 3405] (*Leon*); see also *Gates*, at pp. 236–237 & fn. 10; *People v. Weiss* (1999) 20 Cal.4th 1073, 1082 [86 Cal.Rptr.2d 337, 978 P.2d 1257]). Ultimately, "the magistrate's determination will not be overturned unless the supporting affidavit fails as a matter of law to support the finding of probable cause. [Citations.]" (*Fenwick & West v. Superior Court* (1996) 43 Cal.App.4th 1272, 1278 [51 Cal.Rptr.2d 294] (*Fenwick*).)[1]

---

[1] *Gates* also stated regarding the standard of review, "we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." (*Gates, supra,* 462 U.S. at p. 236.) Arguably, that statement is in some tension with *Camarella's* statement that "the question is one of law subject to our independent review . . ." (*Camarella, supra,* 54 Cal.3d at p. 601), although the California Supreme Court apparently believed that statement was consistent with *Gates,* because *Camarella* relies on *Gates* in its discussion of the standard of review (*Camarella,* at pp. 601–602). Without acknowledging the "independent review" language in *Camarella, Fenwick* describes a purported conflict between the approach to the standard of review in certain California decisions and "the federal approach." (*Fenwick, supra,* 43 Cal.App.4th at pp. 1277–1278.) As *Camarella* apparently concluded, we do not believe there is any actual conflict. A reviewing. court can defer to a magistrate's decision in a close case, while still retaining the ultimate authority to

■ *Gates* explained the importance of the "reliability" of the informant and the informant's " 'basis of knowledge,' " but eschewed any rigid formula requiring a certain threshold showing of both indicia, explaining that "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." (*Gates, supra*, 462 U.S. at p. 233.) The court further explained, "If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. [Citation.] Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. [Citation.] Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." (*Id.* at pp. 233–234, fn. omitted; see also *Higgason v. Superior Court* (1985) 170 Cal.App.3d 929, 937 [216 Cal.Rptr. 817] (*Higgason*) [" ' "[V]eracity," "reliability," and "basis of knowledge" are weighed together with any other evidence that supports the finding of probable cause. They are viewed cumulatively, not as independent links in a chain. [Citation.]' [Citation.]"]; *People v. Lissauer* (1985) 169 Cal.App.3d 413, 423 [215 Cal.Rptr. 335] (*Lissauer*) ["the quantum of detail, particularly as it describes subsequently verified future activity, is regarded as a significant factor in assessing the informant's reliability, unless, of course, the independent police investigation reveals patently criminal activity"].)

The People present alternate arguments in support of the affidavit's sufficiency. First, they argue one or more of the three informants provided information that satisfied *Gates*. Second, they contend that even if this is not so, the information was corroborated by the police officer-affiant and by interlocking details in the informants' assertions, justifying issuance of the warrant. We disagree.

### B. *Under* Gates, *None of the Informants Provided Reliable Information*

In the present case, the warrant affidavit fails to provide a basis for according much weight to *any* of the informants' statements based on the criteria outlined in *Gates*. There is little support for a conclusion that any of

decide whether an affidavit provides a substantial basis for a magistrate's determination as a matter of law. (*Leon, supra*, 468 U.S. at p. 915.)

the three informants is reliable, and none of them provided significant information founded on firsthand observations.

Regarding the arrestee informant, the affidavit states nothing about his reliability, and the informant's knowledge rests on hearsay, not personal observation. "Information received from sources who are themselves the focus of pending criminal charges or investigations is inherently suspect." (*Campa, supra,* 36 Cal.3d at p. 882.) Moreover, although hearsay may be relied upon in seeking a search warrant, the hearsay has little value where the informant is untested and the information is uncorroborated and lacking in detail. (See *Gates, supra,* 462 U.S. at pp. 241–242 ["an affidavit relying on hearsay 'is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented' "]; *People v. Terrones* (1989) 212 Cal.App.3d 139, 148–149 [260 Cal.Rptr. 355] (*Terrones*) [although informants had no track record of reliability, "the fact that the basis of their knowledge was personal observation 'may compensate for a less than conclusive demonstration of [their] credibility' "]; see also *Gates,* at p. 234; *Lissauer, supra,* 169 Cal.App.3d at pp. 422–423.) The affidavit discloses no reason to conclude that the arrestee informant's hearsay was reliable.

Confidential reliable informant one (CRI-1) is described as a "confidential reliable informant," but that simple assertion is inadequate to establish reliability because the affidavit contains no facts in support. (See *People v. Kurland* (1980) 28 Cal.3d 376, 392 [168 Cal.Rptr. 667, 618 P.2d 213] ["[a]n affiant's conclusory opinions of reliability or credibility are not enough . . ."]; *U.S. v. Laws* (D.C. Cir. 1986) 257 U.S. App.D.C. 197 [808 F.2d 92, 100] (*Laws*) ["self-serving labels are not substitutes for facts upon which a magistrate can assay the reliability of the source . . ." (fn. omitted)].) Moreover, the affidavit does not specify any basis for CRI-1's assertion that defendant and Camacho were involved in narcotics sales and does not state that any of the information is based on the informant's personal observations. (See *Gates, supra,* 462 U.S. at p. 234; see also *Terrones, supra,* 212 Cal.App.3d at pp. 148–149; *Lissauer, supra,* 169 Cal.App.3d at pp. 422–423; *Laws,* at p. 101.) Additionally, there is no support in the record for the People's assertion that there was corroboration for CRI-1's statement about where Camacho stored her drugs.

Regarding the reliability of CRI-2 (confidential reliable informant two), the affidavit simply states in general terms that information given by CRI-2 in the past "was corroborated and criminal cases were made behind the information." Without any indication of how often CRI-2's past information was corroborated or how recently it was provided, CRI-2's status as a reliable informant is not established. (See *Gates, supra,* 462 U.S. at p. 234; cf. *People v. Mayer* (1987) 188 Cal.App.3d 1101, 1117 [233 Cal.Rptr. 832]

*(Mayer)* [affidavit asserted that the informant had "given information to the affiant in excess of [10] times over the last two years resulting in the issuance of search warrants, the seizure of controlled substances and the arrest of numerous suspects"].) Moreover, the affidavit does not specify the basis for CRI-2's assertions of criminality by defendant and Camacho, or claim the assertions are based on personal observations. (See *Gates, supra,* 462 U.S. at p. 234; see also *Terrones, supra,* 212 Cal.App.3d at pp. 148–149; *Lissauer, supra,* 169 Cal.App.3d at pp. 422–423; *Laws, supra,* 808 F.2d at p. 101.)

■ The assertions of criminality by both CRI-1 and CRI-2 are merely conclusory, and conclusory statements are insufficient to support a warrant. (See *People v. Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333] ["probable cause will not be provided by conclusionary information . . ."].) Although *Gates* rejected a rigid " 'two-pronged test' " requiring a threshold showing of an informant's "reliability" and " 'basis of knowledge' " (*Gates, supra,* 462 U.S. at p. 233), the court reaffirmed its concern with conclusory statements, noting that past cases demonstrate "the limits beyond which a magistrate may not venture in issuing a warrant" (*id.* at p. 239). (See *id.* at pp. 237–239.) In particular, "A sworn statement of an affiant that 'he has cause to suspect and does believe' that liquor illegally brought into the United States is located on certain premises will not do. [Citation.] An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in *Nathanson* failed to meet this requirement. An officer's statement that '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in a home, is likewise inadequate. [Citation.] As in *Nathanson,* this is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." (*Gates,* at p. 239, discussing *Nathanson v. United States* (1933) 290 U.S. 41, 78 L.Ed. 159, 54 S.Ct. 11 (*Nathanson*); see also *Aguilar v. Texas* (1964) 378 U.S. 108, 114–115 [12 L.Ed.2d 723, 84 S.Ct. 1509] (*Aguilar*), overruled on other grounds in *Gates,* at pp. 238–239; *Bailey v. Superior Court* (1992) 11 Cal.App.4th 1107, 1112–1113 [15 Cal.Rptr.2d 17] (*Bailey*); *People v. Love* (1985) 168 Cal.App.3d 104, 108 [214 Cal.Rptr. 483].)

■ The affidavit in the present case was only a little more detailed than the "bare bones" affidavits in *Nathanson* and *Aguilar,* deemed inadequate by *Gates.* Cooper did not merely assert his conclusion that defendant and Camacho are drug dealers, but effectively he did no more than repeat conclusory assertions to that effect by CRI-1 and CRI-2. The affidavit

provided no factual basis for their assertions, not even a basis in hearsay, other than CRI-2's observation of people going into a bedroom at the residence shared by defendant and Camacho. (Cf. *Mayer, supra*, 188 Cal.App.3d at p. 1120 [affidavit was not conclusory; "[i]nstead, the affidavit sets forth in commonsense fashion the factual observation of narcotics and those circumstances which tend to corroborate the informant"].) "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." (*Spinelli v. United States* (1969) 393 U.S. 410, 416 [21 L.Ed.2d 637, 89 S.Ct. 584], overruled on other grounds in *Gates, supra*, 462 U.S. at pp. 238–239; accord, *U.S. v. Smith* (6th Cir. 1999) 182 F.3d 473, 481.)

The People repeatedly contend that CRI-2 witnessed "heavy foot traffic," but the affidavit does not support that contention. The affidavit does not indicate how many people CRI-2 observed or whether CRI-2 witnessed people being taken to another room more than once. (Cf. *People v. Kershaw* (1983) 147 Cal.App.3d 750, 753 [195 Cal.Rptr. 311] (*Kershaw*) [affidavit stated that police observed 22 brief visits to the defendant's residence in 16 hours of surveillance].) Without more detail, CRI-2's observation is not a sufficiently suspicious circumstance to provide any meaningful support for the probable cause determination.

> C. *Corroboration Provided by Affiant and by Interlocking Details of the Informants' Statements Fails to Establish Probable Cause Under* Gates

> 1. *Police Corroboration*

■ The People argue that Cooper's corroboration of the informants provides the probable cause necessary for the warrant. "Our decisions applying the totality-of-the-circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work." (*Gates, supra*, 462 U.S. at p. 241; see also *People v. Maestas* (1988) 204 Cal.App.3d 1208, 1220 [252 Cal.Rptr. 739] (*Maestas*) [stating that *Gates* did not diminish the "heavy emphasis courts traditionally have placed upon corroboration"].) " 'Because unverified information from an untested or unreliable informant is ordinarily unreliable, it does not establish probable cause unless it is "corroborated in essential respects by other facts, sources or circumstances." [Citations.] For corroboration to be adequate, it must pertain to the alleged criminal activity; accuracy of information regarding the suspect generally is insufficient. [Citation.] Courts take a dim view of

the significance of "pedestrian facts" such as a suspect's physical description, his residence and his vehicles. [Citation.] However, the corroboration is sufficient if police investigation has uncovered probative indications of criminal activity along the lines suggested by the informant. [Citation.] Even observations of seemingly innocent activity provide sufficient corroboration if the anonymous tip casts the activity in a suspicious light. [Citations.]' [Citation.]" (*People v. Gotfried* (2003) 107 Cal.App.4th 254, 263–264 [131 Cal.Rptr.2d 840] (*Gotfried*); see also *Gates, supra*, at p. 245; *Higgason, supra*, 170 Cal.App.3d at pp. 939–940.)[2]

In the present case, the police investigation primarily corroborated the "pedestrian facts" provided by the informants regarding defendant's residence and vehicle. Absent corroboration of more probative facts, there was no basis to conclude that the informants' assertions of drug dealing by defendant were reliable. (Cf. *Gates, supra*, 462 U.S. at pp. 244–245 [corroboration by police of specific details provided by informant regarding defendant's travel plans— "future actions of third parties ordinarily not easily predicted"—provided a basis to conclude that the informant's other assertions would be true]; *People v. Costello* (1988) 204 Cal.App.3d 431, 447 [251 Cal.Rptr. 325] [the informant's tip included "abundant detail" and the police were "able to corroborate most of it"].)

The People assert that obtaining the records of Camacho's previous narcotics-related arrests and convictions provided sufficient corroboration of the informants' reports. Though we recognize the corroborative value of recent and relevant narcotics arrests and/or convictions (see *Kershaw, supra*, 147 Cal.App.3d at p. 760; *People v. Scott* (1968) 259 Cal.App.2d 268, 276 [66 Cal.Rptr. 257]), Cooper's affidavit provides no indication of when Camacho's police contacts occurred. Also, the affidavit provides little information regarding the nature of those offenses and no information about what narcotics were involved. (Cf. *Camarella, supra*, 54 Cal.3d at p. 598 [affidavit specified that suspect was arrested in possession of same narcotic at issue in warrant

---

[2] *Gates* confirms that indications of criminal activity may arise from police confirmation of detailed innocent activity described by an untested informant. In *Gates*, an anonymous, handwritten letter informed the police that Susan and Lance Gates were selling drugs in a Chicago suburb. The letter stated in part: " 'Most of their buys are done in Florida. Sue . . . drives their car to Florida, where she leaves it to be loaded up with drugs, then Lance flys down and drives it back. Sue flys back after she drops the car off in Florida. May 3 she is driving down there again and Lance will be flying down in a few days to drive it back.' " (*Gates, supra*, 462 U.S. at p. 225.) The police confirmed that Lance Gates flew to Florida on May 5 and went to a hotel room registered to Susan Gates. They then left the hotel in a car with a license plate registered to a car owned by them and "drove northbound on an interstate highway frequently used by travelers to the Chicago area." (*Gates* at p. 226.) The ability of the police to verify the informant's assertions regarding the Gates' travel plans "indicated, albeit not with certainty, that the informant's other assertions [regarding the drugs] also were true." (*Gates*, at p. 244.)

application, and that suspect also possessed records of narcotics sales at time of arrest].) Here, in the absence of any such details we will not assume the criminal history was recent and provided sufficient corroboration.

## 2. *The Interlocking Details*

The trial court upheld the warrant on the basis that each informant independently corroborated the others, providing probable cause. The People assert that the informants' interlocking statements corroborated each other and cite the language in *People v. Sheridan* (1969) 2 Cal.App.3d 483, 489 [82 Cal.Rptr. 695] (*Sheridan*), "similar information from separate unrelated sources substantially increases the probability of its credibility." But as *Gates* dictates, broad categorical rules, like the one proposed by the People, are rarely effective in evaluating the existence of probable cause. In fact, in *Sheridan*, the two untested informants had each personally observed marijuana at the residence targeted in the warrant or in the possession of the residents. (*Sheridan*, at pp. 486, 489.) In other cases cited by the People, and in other similar cases, the informants' statements included personal observations of nonpedestrian facts and/or the police corroborated nonpedestrian facts through independent investigation. (See *Terrones, supra,* 212 Cal.App.3d at p. 149 [four informants provided interlocking information based on personal observations of drug purchases or suspicious activities]; *People v. Green* (1981) 117 Cal.App.3d 199, 202–203 [172 Cal.Rptr. 582] [multiple informants reported personally purchasing narcotics from the defendant's apartment or other information indicating illegal narcotics activity]; *People v. Balassy* (1973) 30 Cal.App.3d 614, 618–621 [106 Cal.Rptr. 461] (*Balassy*) [informant reported detailed personal observations that were corroborated by police investigation and another informant]; *Clifton v. Superior Court* (1970) 7 Cal.App.3d 245, 252–254 [86 Cal.Rptr. 612] [two informants separately admitted personal involvement in criminal conduct with the defendant]; *U.S. v. Yarbrough* (9th Cir. 1988) 852 F.2d 1522, 1533 [in addition to facts uncovered through independent investigation, FBI received specific, factual interlocking tips regarding storage locker where evidence was discovered]; *Laws, supra,* 808 F.2d at pp. 102–103 [one of the informants related personal observations and independent police investigation corroborated both informants]; *U.S. v. Landis* (9th Cir. 1984) 726 F.2d 540, 542–543 [interlocking tips involved personal observations by each informant regarding methamphetamine manufacturing]; *U.S. v. Hyde* (5th Cir. 1978) 574 F.2d 856, 863 (*Hyde*) ["the 29-page affidavit is extremely detailed" and independent police investigation corroborated some of the information].)

■ *Gates* suggests, and the cases cited in the previous paragraph confirm, that in appropriate circumstances information obtained from unreliable informants may corroborate information obtained from other unreliable informants. But it would be illogical to conclude multiple unreliable informants,

whose statements interlock only on pedestrian details, sufficiently corroborate each other to justify issuance of a warrant. Such a conclusion would be inconsistent with the requirement that *police* corroboration of an unreliable informant pertain to " 'probative indications of criminal activity along the lines suggested by the informant.' " (*Gotfried, supra,* 107 Cal.App.4th at p. 264.) At a minimum, to provide sufficient corroboration in the totality of the circumstances analysis, at least some of the informants' statements must contain some indicia of reliability, such as an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand." (*Gates, supra,* 462 U.S. at p. 234.) Here, however, the arrestee informant made an undetailed factual assertion based on hearsay (that his wife purchased heroin from defendant) and CRI-1 and CRI-2 made only conclusory assertions that defendant and Camacho are drug dealers. The People have failed to cite any cases in which affidavits were upheld in circumstances analogous to those in the present case. The challenged affidavit failed to "provide the magistrate with a substantial basis for determining the existence of probable cause" and reduced the magistrate's determination of probable cause to a "mere ratification of the bare conclusions of others." (*Id.* at p. 239.)

The decision in *Bailey, supra,* 11 Cal.App.4th 1107 is consistent. There, one anonymous informant and one citizen informant informed officers of recent heavy foot traffic to and from the defendant's apartment. The informants expressed the opinion that the defendant was selling drugs or engaging in prostitution. An independent police investigation merely confirmed that the defendant lived at the address in question. The Court of Appeal concluded the information developed from the informants and from the minimal police investigation did not constitute probable cause to search the defendant's apartment. (*Id.* at p. 1113; see also *Higgason, supra,* 170 Cal.App.3d at pp. 939–940 [three anonymous tips "corroborated" only as to pedestrian facts, but not by the independent observation of suspicious activities, did not establish probable cause].)

Consistent with *Gates*'s rejection of the rigid "two-pronged" approach, a magistrate may consider informants' statements such as those involved in this case, despite their unreliability, conclusory nature, lack of personal observation, and/or the absence of a specified basis of knowledge. For example, had the police or other untested informants corroborated significant details about defendant's activities, the informants' statements could properly be weighed in the totality of the circumstances, and the corroboration might have been enough to establish probable cause. But, absent any such corroboration, probable cause cannot be found by adding together the undetailed, hearsay, and unreliable assertions of the arrestee informant and the unreliable and conclusory assertions of CRI-1 and CRI-2. Even considered together, the

various informants' statements failed to "provide the magistrate with a substantial basis for determining the existence of probable cause." (*Gates, supra*, 462 U.S. at p. 239.)

## II. *Good Faith Exception Is Applicable*

Having concluded that the search warrant was unsupported by probable cause, we address whether the denial of defendant's motion to suppress should be affirmed under the good faith exception to the exclusionary rule. Defendant contends the good faith exception is inapplicable because the affidavit in support of the search warrant was so lacking that Cooper could not have reasonably believed it was sufficient. We disagree.

■ "Evidence obtained by police officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate is ordinarily not excluded under the Fourth Amendment, even if a reviewing court ultimately determines the warrant is not supported by probable cause. [Citation.] This is commonly referred to as the good faith exception to the exclusionary rule. However, the good faith exception to the exclusionary rule is inapplicable if 'the affidavit was " 'so lacking in indicia of probable cause' " that it would be " 'entirely unreasonable' " for an officer to believe such cause existed.' [Citation.] 'The question is whether "a well-trained officer should reasonably have *known* that the affidavit failed to establish probable cause (and hence that the officer should not have sought a warrant)." [Citation.] An officer applying for a warrant must exercise reasonable professional judgment and have a reasonable knowledge of what the law prohibits. [Citations.] If the officer "reasonably could have believed that the affidavit presented a close or debatable question on the issue of probable cause," the seized evidence need not be suppressed.' [Citation.] The absence of any legal authority directly on point and the existence of arguably supportive legal authority renders the issue of probable cause debatable. [Citation.]" (*People v. Garcia* (2003) 111 Cal.App.4th 715, 723 [3 Cal.Rptr.3d 895] (*Garcia*).)[3]

" '[T]he prosecution has the burden of proving that the officer's reliance on the warrant was objectively reasonable.' [Citation.]" (*People v. Hirata* (2009) 175 Cal.App.4th 1499, 1508 [96 Cal.Rptr.3d 918].) "Application of the good faith exception requires a factual presentation of the officers' activity, which is then measured against a standard of objective reasonableness. [Citation.]

---

[3] As the California Supreme Court has pointed out, "the term 'good faith exception' may be somewhat of a misnomer, because the exception focuses on the objective reasonableness of an officer's conduct. [Citations.] Nevertheless, we use the term because of its common acceptance by commentators and courts, including the high court itself. [Citation.]" (*People v. Willis* (2002) 28 Cal.4th 22, 29, fn. 3 [120 Cal.Rptr.2d 105, 46 P.3d 898].)

This objective standard 'requires officers to have a reasonable knowledge of what the law prohibits.' [Citation.]" (*Gotfried, supra,* 107 Cal.App.4th at p. 265.)

 The minimal police investigation and lack of detail in the affidavit are factors weighing against application of the good faith exception. Where "neither the veracity nor basis of knowledge of the informant is directly established, the information is not so detailed as to be self-verifying and there is no logistical or other reason why verification from other sources cannot be achieved, . . . the failure to corroborate may be indicative that it was objectively unreasonable for the officer to believe in the existence of probable cause." (*Maestas, supra,* 204 Cal.App.3d at pp. 1220–1221, fn. omitted.) Nevertheless, the question under *Leon, supra,* 468 U.S. 897, "is not whether further investigation would have been reasonable, but whether a reasonable officer in [the affiant's] position would have *known* that the affidavit, as it existed at the time it was to be presented to the magistrate, was legally insufficient without additional and more recent corroboration." (*Camarella, supra,* 54 Cal.3d at p. 606, fn. omitted.)

 We apply the good faith exception in the present case because broad language in several prior court decisions may have led a reasonable officer to conclude the affidavit presented a debatable question as to the existence of probable cause. In particular, several decisions contain language flatly suggesting that multiple unreliable informants can corroborate each other. Thus, in *Sheridan, supra,* 2 Cal.App.3d at page 489, the court stated, "[I]t may not be said as a matter of law, that two or more independent reports of previously untested informers each corroborating the other, of the same criminal activity, do not constitute probable cause for an arrest or search. . . . [S]imilar information from separate unrelated sources substantially increases the probability of its credibility." In *Balassy, supra,* 30 Cal.App.3d at page 621, the court stated, "one 'unreliable' informer's statements may be corroborated by those of another, if they were interviewed independently, at a different time and place. [Citations.]" (Accord, *People v. Green, supra,* 117 Cal.App.3d at p. 205.) And in *Laws, supra,* 808 F.2d at page 103, the court stated, "The fact that two apparently unassociated persons make the same assertion increases the probability that it is true." (See also *Hyde, supra,* 574 F.2d at p. 863.)

As explained previously, all of those cases are distinguishable from the present case. However, because the broad language in the decisions in the previous paragraph was "arguably supportive legal authority" in favor of issuance of the warrant, we conclude the existence of probable cause was

debatable[4] and, therefore, the trial court properly denied the motion to suppress the evidence seized under the search warrant.[5] (*Garcia, supra,* 111 Cal.App.4th at p. 723; see also *People v. Pressey* (2002) 102 Cal.App.4th 1178, 1191 [126 Cal.Rptr.2d 162] ["Given the dearth of authority directly on point and the existence of potentially supportive precedent, the issue of probable cause was 'debatable' when the warrant herein was sought, even though the issue, upon examination, is not a particularly close one."].)

## DISPOSITION

The judgment is affirmed.

Jones, P. J., and Needham, J., concurred.

---

[4] Though not determinative in our good faith analysis, we do not ignore that the magistrate who signed the search warrant and two other superior court judges who reviewed it found it sufficient.

[5] Although the trial court denied the motion to suppress on the ground that the affidavit established probable cause, we may affirm on a different ground than that relied on by the trial court. (*People v. Cowan* (2010) 50 Cal.4th 401, 473, fn. 25 [113 Cal.Rptr.3d 850, 236 P.3d 1074].)