[No. A091237. First Dist., Div. Four. Dec. 29, 2000.]

THE PEOPLE, Plaintiff and Appellant, v.
KRISTOPHER DANIEL COULOMBE, Defendant and Respondent.

## COUNSEL

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, René A. Chacón and Juliet B. Haley, Deputy Attorneys General, for Plaintiff and Appellant.

Phillip A. Treviño, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**SEPULVEDA, J.**—This is an appeal by the People from the decision of the trial court dismissing the action below after granting defendant's motion made pursuant to Penal Code section 1538.5.[1] Applying the recent case of *Florida v. J.L.* (2000) 529 U.S. 266 [120 S.Ct. 1375, 146 L.Ed.2d 254] (*Florida v. J.L*), the trial court ruled that the detention and patsearch of an individual identified by two anonymous citizen informants as carrying a firearm, was illegal. We conclude that the ruling of the trial court was erroneous and reverse.

### BACKGROUND

The facts are not in dispute. On New Year's Eve 1999, at approximately 11:00 p.m., two separate citizens, approximately five to ten seconds apart,

---

[1] All further references are to the Penal Code. The trial court's order dismissing the case prior to trial, pursuant to section 1385 and based upon the court's granting of defendant's motion to suppress, is appealable under section 1238, subdivision (a)(7).

approached Police Sergeants Combs and Wynne at the "First Night" celebration in downtown Santa Rosa, pointed toward the Cantina restaurant approximately 75 feet away, and indicated that a man wearing a white cap had a gun. Identifying information was apparently not obtained from the citizens who provided this information. Three police officers immediately approached the location indicated by the citizens. Sergeant Combs observed defendant, who was wearing a white cap and seated in a wheelchair. He was the only person in the area who matched the description given to the police. Sergeant Wynne approached defendant on the left side of his body; Sergeant Combs from the right side. They basically approached defendant at the same time, although Sergeant Combs was a little bit ahead of Wynne. Combs told defendant why they were contacting him and asked if he had any weapons on his person. Sergeant Combs testified that defendant denied carrying any weapons, but clutched the right side pocket area of his pants. Concerned for officer safety, Sergeant Combs placed his hand over defendant's hand and told him that he was going to patsearch him. When Sergeant Combs placed his hand on top of defendant's hand, he felt a hard object. Upon removing defendant's hand from the area, he felt what he believed to be a small revolver. He reached into defendant's pocket and found a "small snub-nosed stainless steel revolver."

Sergeant Wynne testified that he walked over toward the Cantina restaurant with Sergeant Combs and Sergeant Kohut. He contacted defendant and asked if he had a gun; defendant denied having one. Wynne testified that as he asked defendant about the gun he simultaneously began to search the left side of his clothing. Sergeant Wynne testified that defendant was not free to go when he searched him.

Defendant was charged with possession of a firearm by a felon (§ 12021, subd. (a)(1)), possession of a concealed firearm (§ 12025, subd. (a)(2)), and possession of ammunition by a felon (§ 12316, subd. (b)(1)). Defendant's motion to suppress, brought pursuant to section 1538.5, was granted and the trial court dismissed the charges under section 1385. This timely appeal followed.

## DISCUSSION

■ The trial court found that the detention and patsearch of defendant were illegal, relying on the recent *Florida v. J.L.* decision by the United States Supreme Court. In that decision, the court ruled that an anonymous telephone tip that an individual was carrying a gun was insufficient by itself to justify a stop-and-frisk. ■ The standards for appellate review of the trial court's determination on a motion to suppress pursuant to section

1538.5 are well settled. The trial court's factual determinations are reviewed under the deferential substantial evidence standard; its determination of the applicable rule of law is scrutinized under the standard of independent review. (*People v. Williams* (1988) 45 Cal.3d 1268 [248 Cal.Rptr. 834, 756 P.2d 221].) We independently assess as a question of law whether, under such facts as found by the trial court, the challenged action by the police was constitutional. (*People v. Duncan* (1986) 42 Cal.3d 91, 97 [227 Cal.Rptr. 654, 720 P.2d 2].)

█ A police officer may temporarily detain and patsearch an individual if he believes that criminal activity is afoot, that the individual is connected with it, and that the person is presently armed. (*Terry v. Ohio* (1968) 392 U.S. 1, 30 [88 S.Ct. 1868, 1884-1885, 20 L.Ed.2d 889].)[2] The issue is whether the officers can point to specific and articulable facts that give rise to a reasonable suspicion of criminal activity. Reasonable suspicion is a less demanding standard than probable cause and is determined in light of the totality of the circumstances. (*United States v. Sokolow* (1989) 490 U.S. 1, 7-8 [109 S.Ct. 1581, 1585-1586, 104 L.Ed.2d 1].) If the officer identifies himself and nothing acts to dispel his reasonable fear for his own or others' safety, "he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (*Terry v. Ohio*, *supra*, 392 U.S. at p. 30 [88 S.Ct. at pp. 1884-1885], as quoted in *Florida v. J.L.*, *supra*, 529 U.S. at p. 270 [120 S.Ct. at p. 1378].) In determining the legality of a temporary detention, the court looks to the "totality of the circumstances" to ascertain if it is supported by reasonable suspicion. (*United States v. Cortez* (1981) 449 U.S. 411 [101 S.Ct. 690, 66 L.Ed.2d 621].) The California Supreme Court has succinctly summarized the issue by stating, "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982].)

 ██ But for the possible impact of the principles set forth in *Florida v. J.L.*, it is clear that the officers here were justified in detaining

---

[2]As the appellant points out in his reply brief, the conduct of the police in this case falls squarely within the temporary detention/stop and frisk/patsearch category of government/private citizen interaction. Clearly it went beyond a mere consensual encounter (at least as of the point in time when the patsearch began), but fell short of an arrest and full search. (*Florida v. Bostick* (1991) 501 U.S. 429, 435 [111 S.Ct. 2382, 2386-2387, 115 L.Ed.2d 389].) We use the term "detention" in this context to refer to a temporary, investigatory stop or seizure of the person, which has not yet ripened into an arrest.

defendant[3] and patsearching him. Any reasonable person would conclude, given two independent reports by citizens that an individual matching defendant's description, in defendant's location, at that particular point in time, was carrying a firearm in a crowd of New Year's Eve revelers, that these constituted "specific and articulable facts" giving rise to a reasonable suspicion that defendant was engaged in criminal activity and was armed. (*Terry v. Ohio, supra,* 392 U.S. at p. 30 [88 S.Ct. at pp. 1884-1885]; *United States v. Sokolow, supra,* 490 U.S. at p. 12 [109 S.Ct. at p. 1588].)

In *Florida v. J.L.,* the police received *one* anonymous telephone call reporting that a suspect matching the defendant's description, and at his location at a bus stop, had a gun. The court found that anonymous tip, under those particular circumstances, not to be sufficiently reliable so as to be the sole basis for a detention and patsearch. The court noted, however, that "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" (*Florida v. J.L., supra,* 529 U.S. 266, 270 [120 S.Ct. 1375, 1378].) The tip in that case was found lacking as it "provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." (*Id.* at p. 271 [120 S.Ct. at p. 1379].) Even the inclusion in the tip of a physical description of the suspect was found lacking for this purpose, as "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." (*Ibid.*)

The court declined to find a "firearm" exception to the standard *Terry v. Ohio, supra,* 392 U.S. 1, analysis. The court also concluded that the facts of the case before them did not require them to speculate about "the circumstances under which the danger alleged in an anonymous tip might be so

---

[3]Although the record is not well developed in this area, the detention in this case appears to have begun when the officers pat-searched defendant. As the district attorney attempted to argue below, the interaction between the officers and defendant up until that point was a consensual encounter. Although the officers were in uniform, there was no indication that they had their guns drawn or otherwise communicated to defendant that he was not free to leave. One officer approached defendant from his left side and the other from his right side. A person is detained for purposes of the Fourth Amendment only if "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (*United States v. Mendenhall* (1980) 446 U.S. 544, 554 [100 S.Ct. 1870, 1877, 64 L.Ed.2d 497]; *People v. Valenzuela* (1994) 28 Cal.App.4th 817, 824 [33 Cal.Rptr.2d 802].) " 'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen[,] may we conclude that a "seizure" has occurred.' " (*Florida v. Bostick, supra,* 501 U.S. 429, 434 [111 S.Ct. 2382, 2386].) Approaching a person, requesting to speak with him, asking for permission to search him, or in this case asking if he has a gun, do not transform an otherwise consensual encounter into a detention. (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790-791 [195 Cal.Rptr. 671, 670 P.2d 325]; *People v. Lopez* (1989) 212 Cal.App.3d 289, 292-293 [260 Cal.Rptr. 641].)

great as to justify a search even without a showing of reliability." (*Florida v. J.L.*, *supra*, 529 U.S. at p. 273 [120 S.Ct. at p. 1380].) Thus, for example, it was reasoned that the indicia of reliability demanded for a report of a bomb might be less than that for a report of a person carrying a firearm.

*Florida v. J.L.* is distinguishable on its facts from the present case.[4] Here we have not one, but two independent tips. The tips were made within five to ten seconds of each other. They were made not anonymously over the telephone, but in person to police officers. The officers had the opportunity to see the tipsters, observe them face-to-face and evaluate their credibility. The citizens who supplied the information subjected themselves to scrutiny and the risk of losing their anonymity by directly approaching the police officers rather than calling in their information. The circumstances under which defendant was alleged to possess a firearm were markedly different than those in *Florida v. J.L.*—the possession occurred not at a bus stop with only two of the suspect's friends present, but rather in a throng of thousands of New Year's Eve celebrants. The danger presented was thus much increased.[5]

---

[4]This is so without our entering into counsel's debate regarding the continuing efficacy, post-*Florida v. J.L.*, of the previously drawn distinction between truly anonymous tips and information received from "citizen informants."

[5]There was one other significant distinction in the evidence presented in this case from that before the court in *Florida v. J.L.* Sergeant Combs testified that defendant reached for his pocket upon being asked if he was armed, before the patsearch by Combs was initiated. Sergeant Wynne never mentions this in his testimony and was not asked about it; it is unclear if he was even in a position to see the movement by defendant. While Combs testified that he approached defendant slightly ahead of Wynne, the record is not specific as to whether Combs's patsearch preceded the one by Wynne. Again, the record was not well developed in this area.

The trial court, in its discussion of the issues before it, ignored Sergeant Combs's testimony completely and focused on the testimony of Sergeant Wynne, finding that his patsearch began simultaneously with his questioning of defendant regarding his being armed and finding that defendant had done nothing to corroborate the tip before the patsearch began. We can only assume that the trial court found Sergeant Combs to be lacking in credibility on this point, or that the court assumed that the two officers conducted their patsearches simultaneously or that Wynne's patsearch preceded the one by Combs. To the extent the court may have found Combs not to be credible, we shall not reassess this credibility on appeal. (*People v. Poe* (1999) 74 Cal.App.4th 826, 830 [88 Cal.Rptr.2d 437] [reviewing court does not reassess credibility of witnesses, in context of evaluating sufficiency of evidence].)

Thus the finding of the trial court, based on Wynne's testimony that defendant did nothing prior to his search (and presumably simultaneous detention) to corroborate the tip or otherwise justify the search independent of the tip, was supported by substantial evidence. (*People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].) Absent this finding by the trial court and the lack of clarity in the record regarding the timing of the two patsearches, defendant's unusual movement to his pocket would be highly probative of the issues before us. The court in *Florida v. J.L.* specifically noted that defendant there made "no threatening or otherwise unusual movements." This movement by defendant, at the point

Justice Kennedy wrote a separate concurring opinion in *Florida v. J.L.* (joined in by Chief Justice Rehnquist) explaining that "[T]here are many indicia of reliability respecting anonymous tips that we have yet to explore . . . . [¶] . . . If the telephone call is truly anonymous, the informant has not placed his credibility at risk and can lie with impunity . . . ." (*Florida v. J.L.*, *supra*, 529 U.S. at pp. 274-275 [120 S.Ct. at pp. 1380-1381] (conc. opn. of Kennedy, J.).) Even though anonymous, a tip from an unidentified citizen may have other features giving it sufficient reliability. "It seems appropriate to observe that a tip might be anonymous in some sense yet have certain other features, either supporting reliability or narrowing the likely class of informants, so that the tip does provide the lawful basis for some police action . . . . For example, if an unnamed caller with a voice which sounds the same each time tells police on two successive nights about criminal activity which in fact occurs each night, a similar call on the third night ought not be treated automatically like the tip in the case now before us." (*Id.* at p. 275 [129 S.Ct. at p. 1381] (conc. opn. of Kennedy, J.).) Further, an in-person supplying of information may be viewed differently from a true anonymous telephone call. "If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip. An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring. This too seems to be different from the tip in the present case. [Citation.]" (*Ibid.*)

Here the receipt of two independent tips from citizens, very close in time, describing in a similar manner the criminal activity (possession of a firearm) and suspect's physical attributes and location, as well as the face-to-face nature of the encounter between the informants and the police, provide sufficient reliability to the information supplied to support the officers' reasonable suspicion that criminal activity was indeed afoot, that defendant was connected with it and that defendant was presently armed. The circumstances of the criminal activity—possession of a firearm in a very large crowd of people during a New Year's Eve celebration, were sufficiently dangerous so as to require less reliability than that required in *Florida v. J.L.*, *supra*, 529 U.S. 266 [120 S.Ct. 1375]. The officers were thus legally justified in patsearching defendant for officer safety; their conduct was reasonable under the Fourth Amendment. Indeed, the officers here would have been derelict in their duty if they had not acted quickly to ascertain if defendant was indeed armed with a firearm, under the circumstances presented. We see

---

when he was asked by police if he had a gun, could have supplied corroboration of the tip that he was armed, if it preceded his detention.

no other reasonable course of action they could have taken to make that determination, without risking injury to themselves or those in the surrounding crowd, other than the one they engaged in. Thus the trial court erred in granting defendant's motion to suppress pursuant to section 1538.5 and in dismissing the charges.

## CONCLUSION

The judgment of dismissal is reversed with directions to reinstate the dismissed charges, deny the motion to suppress under section 1538.5, and proceed in a manner consistent with this opinion.

Reardon, Acting P. J., and Woolard, J.,* concurred.

A petition for a rehearing was denied January 18, 2001, and respondent's petition for review by the Supreme Court was denied April 11, 2001. Mosk, J., was of the opinion that the petition should be granted.

---

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.