Filed 7/1/15  In re Aaron C. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re AARON C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>AARON C.,<br><br>        Defendant and Appellant. | A144058<br><br>(Contra Costa County<br>Super. Ct. No.  J13-01121) |

Following denial of his motion to suppress the evidence against him (Pen. Code, § 1538.5),[1] appellant Aaron C. entered a plea of no contest to a charge of felony possession of a firearm by a minor (§ 29610).  The juvenile court continued Aaron on probation as a ward of the court and ordered him removed from his parents' custody.

Assigned counsel has submitted a *Wende*[2] brief, certifying that counsel has been unable to identify any issues for appellate review.  Counsel also has submitted a declaration confirming that Aaron has been advised of his right to personally file a supplemental brief raising any points which he wishes to call to the court's attention.  No supplemental brief has been submitted.  As required, we have independently reviewed the

---

[1] Undesignated statutory references are to the Penal Code.

[2] *People v. Wende* (1979) 25 Cal.3d 436.

1

record.  (*People v. Kelly* (2006) 40 Cal.4th 106, 109–110.)  We find no arguable issues and therefore affirm.

## I.    BACKGROUND[3]

At approximately 6:50 p.m. on October 12, 2014, Pittsburg police officers, Sankara Dumpa and Angelica Valles, observed Aaron leaning against a fence along a sidewalk on Crestview Drive, a residential street in Pittsburg.  Dumpa described it as a "high crime area" with "multiple shootings, drug transactions."  Aaron was wearing a dark hooded sweatshirt with the hood pulled over his head.  Dumpa believed Aaron's attire, baggy clothing and a hooded sweatshirt, was unusual because it had been a warm day.  Aaron was alone, but another male was walking toward him.

When Dumpa stopped at the intersection of Crestview and Olympia Drives, Aaron and the other individual looked at the patrol car and turned around to walk north on Crestview.  The officers made a U-turn to drive back to the two individuals "[j]ust to find out who they are, if they lived in the neighborhood.  [Dumpa had] never seen them in the area before."  Dumpa, who was in uniform, parked the police car along the curb approximately 15 yards north of where Aaron and the other male were walking.  Dumpa got out of the police car and stood by the driver's side door, waiting for Aaron and his companion to approach the car.  As Aaron walked toward the police car, Dumpa said something to the effect of, "Hey, what's up man" or "What's up, man?  How are you doing?"  Valles got out of the car on the passenger side.

Aaron and the other male were about 10 feet in front of the patrol car when Dumpa greeted them.  Dumpa noticed that, as Aaron approached the patrol car, his hands were concealed in the front pockets of his sweatshirt, so he asked Aaron to take his hands out of his pockets "for safety reasons."  Aaron said nothing, keeping his hands in his pockets and shaking his head "no."  Dumpa noticed a "bulge" in either the pocket of Aaron's sweatshirt or the front of his waistband.  Based on his training, Dumpa believed

---

[3] The factual background is taken from testimony presented at a November 3, 2014 hearing on the motion to suppress evidence.

2

the bulge could be a gun. Dumpa said, "Show me your hands." Aaron replied, "I'm not going to show you my hands." When Aaron refused a third request, Dumpa removed his gun and pointed it at Aaron, ordering him to show his hands. After Dumpa ordered Aaron to show his hands a fourth time, Aaron and the other individual turned around and "quickly took two steps south." Dumpa believed that Aaron was going to run. Dumpa walked around to the front of the patrol car, and said, "Stop. Show me your hands." Aaron then removed his hands from his pockets and said, "Okay, okay," placing his hands behind his head.

Another Pittsburg police officer, James Anderson, had arrived at the scene to assist. Anderson patsearched Aaron and felt what he believed to be a gun inside the front part of Aaron's sweatshirt. Anderson removed from Aaron's sweatshirt a Glock handgun, which contained a 13-round magazine with 11 live rounds. Aaron told Dumpa that he was on probation for a firearms charge.

A second supplemental juvenile wardship petition alleged that Aaron, then age 14, had committed one count of felony possession of a firearm by a minor (§ 29610) and one count of receiving stolen property (§ 496, subd. (a)). Based on the foregoing testimony, the juvenile court denied Aaron's motion to suppress evidence of the weapon found on his person. Finding it to be a "close case," the court concluded that the initial encounter between Dumpa and Aaron was consensual and that the totality of the circumstances, including Dumpa's suspicion that the observed bulge in Aaron's sweatshirt might be a weapon, justified a subsequent detention.

On November 6, 2014, Aaron pleaded no contest to the charge of felony possession of a firearm by a minor. The prosecution dismissed the charge of receiving stolen property. The court continued Aaron as a ward of the court on probation and ordered him placed in an approved home or institution for 50 months and 22 days. Aaron was ordered to have no contact with the adult with whom he was found at the time of his arrest. He was precluded from possessing a firearm before his 30th birthday and ordered to pay a restitution fine of $100.

Aaron filed a timely notice of appeal.

3

## II. DISCUSSION

While presenting no argument, appointed appellate counsel "notes" three questions "that might arguably support the appeal": (1) was Aaron detained within the meaning of the Fourth Amendment when first contacted by Dumpa; (2) should the court consider Aaron's age (14 years) in determining if Aaron believed he was detained; (3) did Dumpa have reasonable suspicion of criminal activity when he directed Aaron to remove his hands from his pockets. Obviously, counsel found no merit in pursuit of these questions since he certified that he was unable to identify any issues for our review. We likewise find no merit in these avenues of inquiry.

In reviewing a ruling on a motion to suppress under section 1538.5, we " 'review[] the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of reasonableness.' [Citation.] 'We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' " (*People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.)

The trial court found the initial encounter with Aaron was consensual. We agree. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." (*Florida v. Royer* (1983) 460 U.S. 491, 497.) No probable cause or reasonable suspicion was required to initiate this encounter. (*Ibid.*; *In re Manuel G.* (1997) 16 Cal.4th 805, 821.) "An officer has every right to talk to anyone he encounters while regularly performing his duties . . . ." (*People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1227.) A person is not detained simply because an officer approaches him and begins talking to him. "Until the officer asserts some restraint on the [person's] freedom to move, no detention occurs." (*Ibid.*) On the other hand, a detention occurs when the

4

police, "by physical force or show of authority, [have] in some way restrained the liberty of a citizen." (*Florida v. Bostick* (1991) 501 U.S. 429, 434; *People v. Kopatz* (2015) 61 Cal. 4th 62, 79.)

Simply asking Aaron to remove his hands from the pockets of his baggy sweatshirt for officer safety did not convert the consensual encounter into a detention. Whether a particular encounter constitutes a seizure requires assessment of the coercive effect of police conduct as a whole—not particular details of that conduct in isolation—and considers whether all the surrounding circumstances " 'would have communicated to a reasonable person that the person was not free to . . . terminate the encounter.' " (*In re Manuel G*., s*upra,* 16 Cal.4th at p. 821.) Nothing objectively communicated to Aaron that the encounter was coercive until Dumpa drew his weapon, which only occurred after Dumpa noticed a bulge in Aaron's clothing that he believed to be a weapon and Aaron repeatedly refused to show his hands to the officer.[4] The officers were more than justified in forcibly detaining Aaron and performing a patsearch to determine if he was armed.

"If the officer identifies himself and nothing acts to dispel his reasonable fear for his own or other's safety, 'he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.' " (*People v. Coulombe* (2000) 86 Cal.App.4th 52, 56.) "[T]he officer need not be absolutely certain that the individual is armed; the crux of the issue is whether a reasonably prudent person in the totality of the circumstances would be warranted in the belief that his or her safety was in danger." (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1074.) We need only ask, "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (*Terry v. Ohio* (1968) 392 U.S. 1, 21–22.) " 'The judiciary should not

---

[4] We find no support for counsel's suggestion that we consider the subjective perspective of a "reasonable" 14 year old in assessing what was objectively communicated by police conduct.

lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations.' " (*People v. Collier* (2008) 166 Cal.App.4th 1374, 1378.)

No certificate of probable cause was sought or obtained, and no issues are presented as to Aaron's plea. We also find no arguable issue presented as to the dispositional order. "[T]he juvenile court has long enjoyed great discretion in the disposition of juvenile matters." (*In re Greg F.* (2012) 55 Cal.4th 393, 411.) "The standard of review of juvenile court commitment decisions is well established. 'The decision of the juvenile court . . . may be reversed on appeal only upon a showing that the court abused its discretion in its commitment of the minor.' " (*In re Jose R.* (1983) 148 Cal.App.3d 55, 59.) " ' "We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." ' " (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330.)

### III.  DISPOSITION

We find no arguable issues and affirm.

_____
BRUINIERS, J.


WE CONCUR:


_____
SIMONS, Acting P. J.


_____
NEEDHAM, J.


7

A144058