Filed 8/21/25  P. v. Guery CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARCUS GUERY,<br><br>        Defendant and Appellant. | A170297<br><br>(San Francisco City & County<br>Super. Ct. No. SCN233525) |

A jury found defendant Marcus Guery guilty of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1))[1] and carrying a concealed firearm (§ 25400, subd. (a)(2)).  The trial court sentenced him to two-year midterms on both counts, stayed the sentence on the second count under section 654, and suspended execution of sentence and placed him on formal probation for two years.  Defendant's sole contention on appeal is that the magistrate and trial court erred in denying his motion to suppress because the arresting officers assertedly lacked reasonable suspicion to detain and patsearch him. We affirm.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

1

At the preliminary hearing, defendant moved to suppress all evidence obtained following a detention and patsearch, which were precipitated by information supplied by a confidential informant to San Francisco Police Officer Stephen Coleman. Coleman received this information during November 2020, within 10 days of reporting it to other officers. The evidence presented at the hearing included the following:

The informant told Officer Coleman he/she "observed a black male about 35 years old,[2] light complected with short hair, [who] was driving an older model two-door BMW [and was] armed with a firearm. There was front end damage to the bumper and the license plate was 5UXM737. The [informant] stated this person frequented the 6th street corridor." The 6th Street corridor and its side streets are known as high-crime areas, especially violent crimes such as robberies, assaults, and shootings. The informant told Coleman the person was addressed as "E," but did not provide an actual name.

When asked the exact date within the 10-day period that he received the information, Officer Coleman invoked informant privileges, citing Evidence Code sections 1040, 1041, and 1042,[3] on the ground disclosing the

_____

[2] Defendant was 43 years old at the time of his arrest.

[3] Evidence Code section 1040, subdivision (b)(2) provides in pertinent part: "A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and either of the following apply: [¶] . . . [¶] (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interests of justice. . . ."

Evidence Code section 1041, subdivision (a)(2) provides in pertinent part: "a public entity has a privilege to refuse to disclose the identity of a

date would "tend to let the defendant know who this informant was and help disclose their identity." The magistrate stated, "I think that's correct. And generally speaking, information about the exact timing of a[n informant] conversation with law enforcement more specific than a [10]-day time frame is privileged." Defense counsel maintained the answer "would be relevant to the motion to suppress as to how recent this information was." The court upheld Coleman's invocation of privilege.

Defense counsel later asked Officer Coleman if the informant told him when he/she had seen the person with the gun. Coleman replied affirmatively, but as to the exact date, again invoked the informant privileges. Defense counsel objected, stating "Your Honor, I still think we need this information for the [motion to suppress]." The prosecution replied, "I don't know the exact relevance. As long as there was a tip, the tip said X, Y, Z; the actual relative temporal closeness between the tip and the ultimate arrest—I don't know if it's so probative that it's necessary at this juncture. . . ." The court also upheld this invocation of privilege, stating "I

person who has furnished information" to a law enforcement officer when "[d]isclosure of the identity of the informer is against the public interest because the necessity for preserving the confidentiality of his or her identity outweighs the necessity for disclosure in the interest of justice. . . ."

Both sections stated that, "the interest of the public entity as a party in the outcome of the proceeding shall not be considered," in "determining whether disclosure of the identity of the informer is against public interest."

Evidence Code section 1042, subdivision (c) provides in pertinent part: "in any preliminary hearing . . . any otherwise admissible evidence of information communicated to a peace officer by a confidential informant . . . is admissible on the issue of reasonable cause to make an arrest or search without requiring that the name or identity of the informant be disclosed if the judge or magistrate is satisfied . . .that such information was received from a reliable informant and in his discretion does not require such disclosure."

believe that the information sought by that particular question is privileged under [section] 1040. I understand your argument that you think it's relevant. I don't see it as so relevant as to require a waiver of that privilege."

Officer Coleman proceeded to testify that the informant was reliable, stating he/she had been "tested, has provided information in the past to officers of the San Francisco Police Department [which] resulted in arrests, seizures of firearms, and narcotics. [¶] . . . [¶] [T]hey've established a track record of reliability." On November 12, Coleman relayed the information provided by the informant to San Francisco Police Officer Timothy Brophy.

Officer Brophy was on assignment that day, in the plainclothes unit, driving an unmarked police vehicle though the 6th Street corridor. Around 10:00 p.m., Brophy spotted the BMW with the specified license plate the informant had reported near 6th and Jessie Streets. He also observed tape on the front of the vehicle, indicating possible damage.

Officer Brophy saw a person, later identified as defendant, "walk up to the driver's side door of the vehicle and appear to use a key to enter the front door [of the vehicle]." He continued to watch as defendant "turned the car on, sat in the driver's seat, and over the next . . . 10, 15 minutes" saw defendant get out of the car and repeat this behavior "two more times." Defendant wore a beanie, a face mask, and a long parka—thus covering most of his face and body, so Brophy was unable to tell defendant's age. From his vehicle, Brophy was unable to observe a bulge in defendant's pants, which could indicate a firearm. He did not observe defendant committing any crimes during this period of time.

Officer Brophy contacted two other officers, informing them he had located the specified BMW. Based on his own observations and the

4

information collected from Officer Coleman, Brophy called for defendant's arrest, believing defendant was in unlawful possession of a firearm.

At the close of the hearing, the court heard argument on defendant's motion. Defense counsel argued the People had (1) not shown the information provided by the informant was sufficiently reliable to establish "probable cause"; (2) even if "initially reliable," the information was "nonetheless stale by the time the search was effectuated"; and (3) the officers were not "justified in believing that [defendant] was in fact the target" of the informant's information. Specifically, as to the second point (staleness), counsel argued, "Here we are missing a key piece of information which is when did this [informant] make the observation that he passed along to Officer Coleman? We heard that Officer Coleman passed the information on to Officer Brophy within [10] days of the arrest, but we don't have the information of when the [informant] actually made this observation that formed the basis of the tip. [¶] So that observation by the [informant] could have been weeks or even longer before that."

Saying defendant's staleness argument presented a "closer" question than his others, the court nevertheless rejected it finding, "there's enough information to show that the confidential informant was a reliable source based on past experiences with that informant . . . previously providing information that led to arrests and prosecutions." While there "was no evidence in the record about when the confidential informant observed the person in the car with the gun; in other words [no evidence as to] when the observation was made versus when it was conveyed to law enforcement," that fact was not "determinative." Rather, the court had "to weigh it against some of the other factors." The court then pointed to the specificity of the tip, including that the informant described "a specific person with an age range"

5

and "a vehicle by make and damage to the fender and a very specific license plate number." The information also included, "an accurate prediction of where that car and individual would be found in a very specific small neighborhood of the City, which we call the 6th Street corridor." In sum, this "was not an anonymous unreliable tip. [¶] This was some very specific information provided by an informant that had been accurate in the past and was considered reliable by law enforcement." The court therefore denied the motion to suppress and held defendant to answer.

After the district attorney filed an information defendant renewed his contentions in a motion to set aside the information in the superior court. The court commenced the hearing on the renewed motion by characterizing defense counsel's arguments as, one, "being the vagueness of the time in which the informant saw the alleged gun in this case," and two, that the prosecution "did not establish reliability of the informant based on articulable facts when the informant provided information in the past, what type of information has been provided, and what was the result of that information." Neither party presented any additional evidence.

After hearing argument, the court denied the renewed motion, finding "that the [informant] provided detailed descriptions. He described the make, the model, and the current condition of defendant's vehicle. He provided the full license plate of the vehicle, the type of firearm. He described witnessing the defendant driving with the firearm. And I find that this was factual support and not just mere conclusory allegations that defendant had a gun. He described the gun as a Glock-style, black semiautomatic weapon. And from there combined with—when I look at the totality of the circumstances here, he also provided predictive information that the police were able to corroborate in terms of where he would be, what type of car he would be in.

6

Thus, I believe that this tip supported the reasonable suspicion to detain and conduct the pat search of the defendant."

DISCUSSION

***The Relevant Law***

"The Fourth Amendment to the federal Constitution prohibits unreasonable searches and seizures."[4]  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 365, italics omitted.)  A warrantless search is per se unreasonable.  (*People v. Fayed* (2020) 9 Cal.5th 147, 182.)  "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." (*Brigham City v. Stuart* (2006) 547 U.S. 398, 403.)

One such exception—explicated in *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*)—exists when an officer "harbors a reasonable suspicion that 'criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous.' " (*People v. Esparza* (2023) 95 Cal.App.5th 1084, 1091 (*Esparza*).)  In such situations, "an investigatory detention and patdown search for weapons is constitutionally permissible under the Fourth Amendment."  (*Esparza,* at p. 1091.)

" ' "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."  [Citations.]  [¶] Because it is a "less demanding" standard, "reasonable suspicion can be established with information that is different in quantity or content than that required to

---

[4]  It is well established that the Fourth Amendment's right to privacy is enforceable against states with equal force as other due process rights.  (U.S. Const., 4th & 14th Amends.; *Mapp v. Ohio* (1961) 367 U.S. 643, 655, 660.)

7

establish probable cause." [Citation.] The standard "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." ' " (*People v. Flores* (2024) 15 Cal.5th 1032, 1041 (*Flores*); *Esparza*, *supra*, 95 Cal.App.5th at p. 1091.)

"Reasonable suspicion . . . is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' [citation], that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." (*Alabama v. White* (1990) 496 U.S. 325, 330 (*White*).) In such situations, a tip may be suitably corroborated, i.e., provide " 'predictive information' " or through contemporaneous first-hand observations, sufficient to establish an indicia of reliability to provide reasonable suspicion. (*People v. Coulombe* (2000) 86 Cal.App.4th 52, 57–58 (*Coulombe*); *Navarette v. California* (2014) 572 U.S. 393, 397 (*Navarette*) [To determine whether an informant's tip creates reasonable suspicion, courts consider whether the tip "demonstrate[s] 'sufficient indicia of reliability.' "].)

Thus, reasonable *Terry* stops are ones in which a reasonably prudent officer is warranted in the circumstances of a given case in believing that his safety or that of others is endangered, and he may make a reasonable search for weapons of the person believed by him to be armed and dangerous. (*Terry*, *supra*, 392 U.S. at p. 27.) Officers are not required to be "absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his

8

safety or that of others was in danger." (*People v. Pantoja* (2022) 77 Cal.App.5th 483, 488.)

"Where, as here, a suppression motion is made before a magistrate in conjunction with a preliminary hearing and no new evidence is presented in superior court, we are 'concerned solely with the findings of the [magistrate].' [Citation.] We defer to the magistrate's express and implied findings of fact if supported by substantial evidence. [Citations.] We independently assess whether the challenged search or seizure violates the Fourth Amendment, applying federal constitutional standards." (*People v. Tacardon* (2022) 14 Cal.5th 235, 242; *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.)

Against this legal backdrop, we turn to defendant's claims that the prosecution did not establish either the reliability of the confidential informant generally or the reliability of the tip the informant provided to Officer Coleman.

### *Reliability of the Informant*

In *Illinois v. Gates* (1983) 462 U.S. 213, 233 (*Gates*), the United States Supreme Court discussed both the "reliability" of informants and the " 'basis of [their] knowledge,' " adopting a totality of the circumstances approach. The court explained, "a deficiency in one [area] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." (*Ibid.*) " '[V]eracity', 'reliability,' and 'basis of knowledge' . . . should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe [the informant]." (*Id.* at p. 230.) "These factors are also relevant in the reasonable suspicion context, although allowance must be made in applying

9

them for the lesser showing required to meet that standard." (*White, supra,* 496 U.S. at pp. 328–329.)

Relying on *People v. French* (2011) 201 Cal.App.4th 1307 (*French*), defendant argues "[t]he prosecution here did not provide the information necessary to establish that the informant was reliable." In that case, another division of this court concluded a search warrant was not supported by probable cause because the affidavit submitted in support of the warrant failed to make a sufficient showing that the three informants had provided reliable information. (*Id.* at pp. 1311, 1316.) As to the first informant (the arrestee informant), the affidavit said nothing about his reliability. (*Id.* at p. 1317.) As to the second informant (confidential informant-1), the affidavit contained only a general assertion that the informant was "a 'confidential reliable informant' " and did not "specify any basis for [the informant's] assertion that defendant and [another person] were involved in narcotics sales." (*Ibid.*) As to the third informant (confidential informant-2), the affidavit simply stated that "information given by [the informant] in the past 'was corroborated and criminal cases were made behind the information,' " without "any indication of how often [their] past information was corroborated or how recently it was provided." (*Ibid.*)

Although defendant asserts the "same deficiencies" exist here, that is not the case. To begin with, *French* examined a search warrant affidavit for probable case, a significantly higher standard than reasonable suspicion. Further, Officer Coleman testified the informant here had "been tested," in that he/she had "provided information in the past to officers," which had "resulted in arrests, seizure of firearms, and narcotics." Coleman had "received information from the informant about many different investigations." Further, he had "worked many different investigations with

10

that informant that week." The informant had never "perjured themselves." Thus, he/she had an "established . . . track record of reliability." In addition, in the instant case, the informant provided Coleman with a detailed description of events based on his/her personal observations. Finally, Coleman had received the tip within 10 days of passing it on to Officer Brophy.

Thus, unlike in *French*, here there are multiple concrete reasons, supported by the evidence, supporting the magistrate's finding that the confidential informant was reliable. (See, e.g., *People v. Hansborough* (1988) 199 Cal.App.3d 579, 584 (*Hansborough*) [The affiant stated "the informant had twice within the last two months given [the officer] information leading to the seizure of cocaine, arrests and the filing of informations with the district attorney's office. The officer further stated the information provided by the informant had not been false or misleading."]; see also *White*, *supra*, 496 U.S. at p. 332; *Gates, supra,* 462 U.S. at p. 234 ["[An informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the] tip to greater weight than might otherwise be the case."].)

### *Reliability of the Tip*

Defendant advances two arguments challenging the reliability of the information provided by the confidential informant to Officer Coleman here. He firstly maintains that because the prosecution did not present evidence as to *when* the informant personally observed the conduct by defendant he/she reported to Coleman, the prosecution failed to establish that the tip was not impermissibly "stale." He secondly claims there was insufficient corroboration of the information provided by the informant.

11

### *Staleness*

As we have recited, when defense counsel asked Officer Coleman what day the informant said he/she saw the events communicated to Coleman, Coleman invoked the statutory privileges pertaining to confidential informants. Defense counsel responded that the information was "relevant." The court did not disagree, but concluded the testimony was not "so relevant as to require a waiver of that privilege."

The Attorney General maintains defendant has waived his complaint about the lack of evidence as to when the informant observed the events he/she reported to Officer Coleman, because defendant did not, in his opening brief, challenge the court's ruling on the confidential informant privileges. Or put another way, the Attorney General's position is that if defendant can complain about the state of the evidence without demonstrating that the court abused its discretion in upholding the privilege claim, the privilege is effectively eviscerated.

Acknowledging that he has not challenged the court's privilege ruling, defendant argues that is beside the point. According to defendant, the only issue is whether there is evidence showing when the confidential informant observed what he reported to Officer Coleman. And because there is not, says defendant, the prosecution failed to show the tip was reliable. In other words, under defendant's reasoning, the absence of that single piece of evidence is outcome determinative, and the magistrate was required to find the tip was stale and unreliable, and therefore insufficient to support defendant's detention and subsequent arrest.

We need not, and do not, decide this issue since even assuming defendant can raise the issue, we reject his argument that without Officer Coleman's answer to that one question, the magistrate could not find

12

the tip was reliable and thus sufficient to support defendant's detention and arrest.

As we have recited, the United States Supreme Court has held that whether a confidential informant is a reliable informant *and* whether the information provided by such an informant is reliable are intertwined, multi-faceted inquiries. "*Illinois v. Gates* required trial courts to use a more practical, nontechnical conception in reviewing determinations of whether probable cause is stated in a warrant and expressly rejected the use of 'any rigid demand that specific "tests" be . . . satisfied by every informant's tip.' " (*Hansborough, supra*, 199 Cal.App.3d at p. 584, quoting *Gates, supra,* 462 U.S. at p. 231.) Thus, when a search warrant affidavit, or as here, a detention, is based in part on an informant's tip to the police, the informant's veracity, reliability, and basis of knowledge are relevant considerations in the *totality-of-the-circumstances* test, but no single factor is determinative. (*Gates,* at p. 233.) Moreover, "a deficiency in one [of these considerations] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some indicia of reliability." (*Ibid.*) Indicia of reliability include prior accurate reports by the informant, a lack of ulterior motives in making the report, explicit and detailed description of the alleged wrongdoing, the informant's first-hand observation of the alleged wrongdoing, and corroboration by independent police work. (*Id.* at pp. 233–234, 241.) "The focus . . . is on the '*overall reliability*' of the informant's tip." (*People v. Spencer* (2018) 5 Cal.5th 642, 665, italics added.)

There is also "no bright line rule indicating when information becomes stale," rather, "[t]he question of staleness turns on the facts of each particular case." (*People v. Hulland* (2003) 110 Cal.App.4th 1646, 1652.) " 'If circumstances would justify a person of ordinary prudence to conclude that

13

an activity had continued to the present time, then the passage of time will not render the information stale.' [Citation.] [¶] Courts have upheld warrants despite delays between evidence of criminal activity and the issuance of a warrant, when there is reason to believe that criminal activity is ongoing or that evidence of criminality remains on the premises." (*People v. Carrington* (2009) 47 Cal.4th 145, 163–164.)

Here, the informant presented a tip about someone in possession of a firearm on a busy street. "Courts have recognized that firearms are likely to be retained by a suspect long after the crime is committed," therefore, even " '[s]ubstantial delays' " do not automatically make information " 'stale where the defendant is not likely to dispose of the items police seek to seize.' " (*People v. Lazarus* (2015) 238 Cal.App.4th 734, 764–765 [information concerning the defendant who was suspected of possessing firearm not stale, even after 23-year delay between murder and filing of charges and despite the fact the defendant had reported the firearm stolen].) Unlike more transitory items—such as narcotics—a possession of a firearm is likely to be longer lasting. (*Ibid*.) Accordingly, defendant's singular focus on the lack of evidence of the exact day on which the informant observed the illegal activity is misdirected.

Moreover, although police officers " 'may ascribe greater reliability to a tip, even an anonymous one, where an informant "was reporting what he had observed moments ago," not stale or second-hand information,' " (*People v. Dolly* (2007) 40 Cal.4th 458, 468), contemporaneous or recent observation is but one of many indicia of reliability the court can evaluate in looking at the totality of the circumstances in determining the propriety of a search. (*Id*. at p. 470, citing *People v. Wells* (2006) 38 Cal.4th 1078, 1083 [eschewing rigid categories and assessing reliability under the totality of the circumstances];

14

*Florida v. J.L.* (2000) 529 U.S. 266, 274 (conc. opn. of Kennedy, J.) ["there are many indicia of reliability respecting anonymous tips"]; *People v. Souza* (1994) 9 Cal.4th 224, 230 [case law has "stressed the importance of taking into account 'the totality of the circumstances' in determining the propriety of an investigatory stop"].)

Measured by these standards, the magistrate (as did the trial court), identified an ample basis for finding the information provided by the confidential informant to Officer Coleman was reliable. While recognizing there "was no evidence in the record about when the confidential informant observed the person in the car with the gun; in other words [no evidence as to] when the observation was made versus when it was conveyed to law enforcement," the magistrate correctly stated that factor was not "determinative." Rather, the court had "to weigh it against some of the other factors," which included the specificity of the tip, including that the informant described "a specific person with an age range" and "a vehicle by make and damage to the fender and a very specific license plate number." Further, the information included "an accurate prediction of where that car and individual would be found in a very specific small neighborhood of the City, which we call the 6th Street corridor." Finally, this "was not an anonymous unreliable tip. [¶] This was some very specific information provided by an informant that had been accurate in the past and was considered reliable by law enforcement."

Defendant's reliance on older, out-of jurisdiction cases is misplaced. None of these purports to hold contrary to *Gates*. Nor, of course, could they; indeed, several pre-date *Gates*. These cases also all involved the sufficiency of affidavits to establish probable cause to support search warrants, whereas here we are dealing with the significantly lower reasonable suspicion

15

standard. Finally, while significant attention was paid in these cases to the state of the evidence as to staleness, including lack of evidence as to when the informant observed what he/she reported to the affiant, the outcome in each was driven by the particular facts of the case, all which involved more "transitory" contraband such as drugs. (See, e.g., *United States v. Boyd* (6th Cir. 1970) 422 F.2d 791, 792 [predating *Gates* and holding no probable cause for warrant where supporting affidavit stated an investigator for the Alcohol and Tobacco Division of the IRS had "reason to believe" there was an unregistered distillery on a property because he "detected the odor of fermenting mash" but affidavit did not supply the date the "observation" was made]; *United States v. Huggins* (D.D.C. 1990) 733 F.Supp. 445, 446–447, 448–449 [ruling no probable cause for warrant based on informant's statement that "crack 'was being sold' " on premises because under the totality of the circumstances, there was nothing to support a finding of ongoing criminal activity because, as the court noted, "the goal of selling drugs is to dispose of them" and this was not a case with multiple controlled purchases or continuing surveillance rather there was a single undated controlled purchase, which "does not suggest an ongoing criminal scheme"]; *Herrington v. State* (1985) 287 Ark. 228, 231–233 [holding no probable cause for warrant based on informant's statement that he had "seen marijuana and other controlled substances in the house and on the premises" because of the "omission of any reference to time" failed to establish when "the criminal activity was observed," italics omitted].)

### *Corroboration*

Defendant also maintains the confidential informant's tip lacked sufficient "predictive" information, nor was the tip sufficiently "corroborated" by officers before detaining him.

To begin with, corroboration—e.g., by the predictive nature of the information or confirming observations by officers—becomes important when a tip has "a relatively low degree of reliability." (*White, supra,* 496 U.S. at p. 330.) Here, as we have discussed, the tip—specific and from a reliable informant—was not of a "low degree of reliability." Accordingly, there was little need for corroboration by way of "predictive information" or "contemporaneous" first-hand observations to establish an " ' "indicia of reliability to provide reasonable suspicion." ' " (*Coulombe, supra,* 86 Cal.App.4th at p. 57; *People v. Dolly, supra*, 40 Cal.4th at p. 468.)

As to predictive information, defendant argues the tip was not sufficiently specific as to when defendant would again be in the area where the informant saw him. But ample evidence supports the magistrate's finding to the contrary. As the court explained, "[the tip] was very specific. It describes a specific person within an age range. It described a vehicle by make and damage to the fender and a very specific license plate number. [¶] . . . [T]he information provided included . . . an accurate prediction of where that car and individual would be found in a very specific small neighborhood of the City."[5]

*White* does not support defendant's argument to the contrary. In *White*, at approximately 3:00 p.m., an anonymous tipster called the police department to report the defendant would be in possession of an ounce of cocaine in a brown attaché case and would be leaving an apartment complex in a station wagon at a particular time and going to a motel. (*White, supra,* 496 U.S. at p. 327.) Acting on the tip, officers immediately proceeded to the apartment complex and observed the defendant leaving and getting into a

---

[5] Officer Coleman testified the informant said defendant "*frequented the 6th street corridor.*"

station wagon but carrying nothing. Officers nevertheless followed the defendant as she "drove the most direct route" to a motel; they stopped her just short of it around 4:18 p.m. (*Ibid.*) The high court upheld the validity of the stop, pointing out the caller who provided the tip showed a "special familiarity" with the defendant's affairs. Specifically, while the tip contained " 'easily obtained facts' " such as the description of the car parked in front of the apartment complex, what "was important was the caller's ability to predict" future behavior. (*Id.* at pp. 327, 332.)

Defendant contends the informant's tip here lacked the predictive quality that established the reliability of the anonymous tip in *White.* Although the tip to Officer Coleman was not as immediately predictive as the tip in *White*, the court here correctly evaluated the totality of the circumstances, and ample evidence supports the magistrate's finding that the tip was credible, including because the informant had previously supplied Coleman with correct information, including within the prior week, and the information with respect to defendant was specific in multiple respects, including as to where the informant had seen defendant, which was a defined locale that he "frequented" and well known to be a high, violent crime area.

As to corroboration, defendant argues the officers corroborated only "pedestrian facts" conveyed by the informant, which was insufficient to bolster the reliability of the informant's tip.

Defendant again relies on *French,* wherein the court stated, " 'For corroboration to be adequate, it must pertain to the alleged criminal activity; accuracy of information regarding the suspect generally is insufficient. [Citation.] Courts take a dim view of the significance of 'pedestrian facts' such as a suspect's physical description, his residence and his vehicles. [Citation.] However, the corroboration is sufficient if police investigation has

18

uncovered probative indications of criminal activity along the lines suggested by the informant. [Citation.] Even observations of seemingly innocent activity provide sufficient corroboration if the anonymous tip casts the activity in a suspicious light." ' " (*French, supra*, 201 Cal.App.4th at pp. 1319–1320.)

But *French* does not support his claim of error here. As we have recited, in *French*, the Court of Appeal concluded the trial court erred in finding information provided by three informants sufficiently reliable to support a search warrant. In so concluding, the court rejected the Attorney General's argument that officers' corroboration of the limited information was enough to establish probable cause under *Gates'* totality-of-the-circumstances standard. (*French, supra*, 201 Cal.App.4th at pp. 1319–1320.) The court explained that the officers had primarily corroborated only "the 'pedestrian facts' provided by the informants regarding defendant's residence and vehicle." (*Id.* at p. 1320.)

Defendant maintains that here the officers corroborated only one "pedestrian" fact—that defendant had the key to the BMW the informant had identified in the tip. But that is not a fair characterization of the record. The informant provided detail as to defendant's race and relative age, multiple specifics about his car, including the make, license plate, and damage to the bumper, that defendant carried a firearm, and the "very specific small" area of the city defendant frequented. The officers were able to corroborate thru visual observation the information about the car (its make, license plate, and the taped front bumper, indicating front-end damage), that defendant appeared to be the owner of the car, defendant's race, and that defendant and the car were located in the area where the informant said he likely would be, an area known to be a high crime neighborhood. This was ample

19

corroboration of the reliability of the tip.  (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1580 [" 'Other forms of corroboration include the verification of detail provided by the informant through the officer's observations.' "].)

## DISPOSITION

The judgment is affirmed.

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Langhorne Wilson, J.

A170297, People v. Guery

21